UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
FEB 2 0 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 02 CR 1117-2 |
| v. | ) | |
| | ) | Judge Milton I. Shadur |
| STOELTING COMPANY | ) | |

DOCKETED FEB 2 4 2004

## PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, STOELTING COMPANY, and its attorneys, WALTER JONES, JR. and CAMILLE B. CONWAY, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and the defendant regarding the defendant's criminal liability in case no. 02 CR 1117-2.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand, or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the

Northern District of Illinois, and the defendant, STOELTING COMPANY, and its attorneys, WALTER JONES, JR. and CAMILLE B. CONWAY, have agreed upon the following:

1. Defendant acknowledges that it has been charged in the indictment in this case with attempting to export polygraph machines to the People's Republic of China, without having first obtained an export license from the U.S. Department of Commerce, in violation of Title 50, United States Code, Section 1705(b), and Title 15, Code of Federal Regulations, Sections 764.2(a), 764.2(c), and 764.2(e), and with exporting polygraph parts and accessories to the People's Republic of China, without having first obtained such an export license, in violation of Title 50, United States Code, Section 1705(b), and Title 15, Code of Federal Regulations, Sections 764.2(a) and 764.2(c).

2. Defendant has read the charges against it contained in the indictment, and those charges have been fully explained to defendant by its attorneys.

3. Defendant fully understands the nature and elements of the crimes with which it has been charged.

4. Defendant will enter a voluntary plea of guilty to Count One of the indictment in this case.

5. Defendant will plead guilty because it is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish its guilt beyond a reasonable doubt:

Defendant was a manufacturer of polygraph machines, among other things, located

620 Wheat Lane, Wood Dale, Illinois. Defendant did business in the United States and overseas. Co-defendant Lavern Miller was defendant's chief executive officer and chairman of the board of directors.

The exportation of polygraph machines was regulated by the U.S. Department of Commerce. Pursuant to its regulatory authority, the Department of Commerce established and maintained a "Commerce Control List," listing specific items whose exportation was licensed, regulated, or prohibited. Among the items listed on the Commerce Control List were polygraph machines and specially designed parts and accessories, which could not be exported to certain specified countries, including the People's Republic of China, without a license issued by the Department of Commerce.

On or about October 29, 1998, defendant applied for a license to export five polygraph machines to "KYKY Scientific Instrument Co.," a business located in Beijing, China. KYKY Scientific Instrument Co. was operated by Lan You Huang, a business associate of co-defendant Miller who intended to resell the polygraph machines to law enforcement authorities in China.

On or about January 15, 1999, the Department of Commerce formally denied defendant's license request based on a determination that it would be detrimental to U.S. foreign policy interests. The Department of Commerce communicated their formal denial in writing to defendant.

After learning that defendant's license application had been denied, Miller made plans

to illegally export polygraph machines to Huang in China by first routing the machines through a third party in Italy. On or about January 29, 1999, Huang wire-transferred approximately $6,735.00 to defendant's bank account in partial payment for three polygraph machines. In an e-mail message transmitted to Huang on or about February 4, 1999, Miller acknowledged receipt of the payment and informed Huang that he expected to ship the polygraph machines through Italy.

In another e-mail message transmitted on or about February 4, 1999, Miller contacted a business associate in Italy named Ugo Basile. Basile operated a company known as Ugo Basile Biological Research Apparatus, and was an exclusive dealer of defendant's products in Italy. Miller's e-mail message to Basile stated, in part, "I am reluctantly again asking a favor. I want to ship 3 Physiological Monitors [meaning polygraph machines] to China. Will you pass the shipment through?" Basile subsequently agreed to ship the polygraph machines to China.

On or about March 5, 1999, defendant delivered the polygraph machines to United Parcel Service ("UPS") for shipment to Basile's company in Italy. UPS did not ship the package; it held the package at its shipping facility and notified the Department of Commerce. Commerce Department agents subsequently examined package and confirmed that it contained three Stoelting polygraph machines and specially designed parts and accessories. The declared value of the goods on the UPS waybill was $13,500. Defendant and Miller attempted to ship these polygraph machines, parts, and accessories without having

first obtained an export license from the Department of Commerce, knowing that the polygraph machines, parts, and accessories were destined for China.

6. Defendant also acknowledges that for the purpose of computing its sentence under the Sentencing Guidelines, the following conduct, to which it stipulates, constitutes relevant conduct under Section 1B1.3 of the Guidelines:

As charged in Counts Two through Four of the indictment, defendant and Miller knowingly and willfully exported, from the United States to China, specially designed polygraph parts and accessories, which items were designated on the Commerce Control List, without having first obtained an export license from the Department of Commerce, all in violation of Title 50, United States Code, Section 1705(b), and Title 15, Code of Federal Regulations, Sections 764.2(a) and 764.2(e). More specifically, defendant and Miller exported the following items to Huang in China, on the following dates:

(a) a Computerized Polygraph System top board on or about January 29, 1998;

(b) a Computerized Polygraph System bottom cover and boards on or about February 5, 1998; and

(c) three Pneumotrace Respiration Sensors on or about September 1, 1998.

These items were shipped to Huang as replacement parts for polygraph machines which previously had been exported to China illegally. The above-listed polygraph parts and accessories were designated on the Commerce Control List and, therefore, defendant and Miller needed an export license from the Department of Commerce before they could

lawfully export them to China. Defendant and Miller knowingly exported these items to China without having first obtained such an export license.

In addition to the polygraph parts and accessories listed above, defendant and Miller unlawfully exported other polygraph parts and accessories to China on other occasions not charged in the indictment. More specifically, defendant and Miller exported polygraph parts and accessories to Huang in China on or about the following dates: September 20, 1996; September 15, 1997; and July 7, 1998. Defendant and Miller exported those polygraph parts and accessories without having first obtained an export license from the Department of Commerce.

7. For purposes of applying the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, as amended, effective November 5, 2003, the parties agree on the following points:

(a) The parties agree that neither a remedial order pursuant to Guideline § 8B1.2 nor community service pursuant to Guideline § 8B1.3 is appropriate due to the nature of the offense of conviction (attempted exportation of polygraph machines to China in violation of law).

(b) The parties further agree that the fine provisions of Guideline §§ 8C2.2-8C2.9 are inapplicable in this case because the applicable guideline offense level is not determined under one of the guidelines listed in § 8C2.1. Instead, as stated in Guideline § 8C2.10, the Court shall determine an appropriate fine by applying the provisions of 18 U.S.C.

§§ 3553 and 3572.

(c) Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing.

8. Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the Probation Office and/or the Court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw its plea on the basis of such corrections.

9. Defendant understands that the count to which it will plead guilty carries a term of probation of at least one year and up to five years, and a maximum fine of $500,000.

10. Defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, defendant will be assessed $400 on the count to which it has pleaded guilty, in addition to any other penalty imposed. Defendant agrees to pay the special assessment of $400 at the time of sentencing with a cashier's check or money order made payable to "Clerk, U.S. District Court."

11. Defendant understands that by pleading guilty it surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against it, it

7

would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and its attorneys would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict defendant unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately.

(c) If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and its attorneys would be able to cross-examine

8

them. In turn, defendant could present witnesses and other evidence in its own behalf. If the witnesses for defendant would not appear voluntarily, it could require their attendance through the subpoena power of the Court.

12. Defendant understands that by pleading guilty it is waiving all the rights set forth in the prior paragraph. Defendant's attorneys have explained those rights to defendant, and the consequences of its waiver of those rights. Defendant further understands that it is waiving all appellate issues that might have been available if it had exercised his right to trial, and only may appeal the validity of this plea of guilty or the sentence.

13. Defendant understands that the indictment and this Plea Agreement are matters of public record and may be disclosed to any party.

14. Defendant understands that the United States Attorney's Office will fully apprise the Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against defendant, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

15. At the time of sentencing, each party shall be free to recommend whatever sentence it deems appropriate.

16. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and, subject to the limitations of the Sentencing Guidelines, may impose the maximum penalties as set forth in paragraph 9 above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties,

defendant will have no right to withdraw its guilty plea.

17. At the time of the entry of this Plea Agreement, defendant shall file with the Court copies of any and all appropriate corporate resolutions adopted by defendant's board of directors authorizing the entry of the Plea Agreement and compliance with its terms.

18. Defendant agrees that its obligations under this Plea Agreement survive any change in its corporate name, form, or status.

19. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to this defendant.

20. Defendant hereby waives any right, title, and interest that it may have in the three polygraph machines and accessories which it attempted to unlawfully export to China and which were seized by the government during the investigation. Defendant agrees not to make any claim whatsoever to such property. Defendant further agrees not to contest any forfeiture proceeding to declare such property forfeited to the United States. Defendant understands that the forfeiture of such property shall not be treated as a satisfaction of any fine, cost of imprisonment, or any other penalty which the Court may impose upon defendant.

21. Defendant understands that its compliance with each part of this Plea Agreement extends throughout and beyond the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. Defendant further understands that in the event it violates this Agreement, the government, at its option, may

move to vacate the Agreement, rendering the Agreement null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or to resentence defendant. Defendant understands and agrees that in the event that this Plea Agreement is breached by defendant, and the government elects to void the Plea Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

22. Defendant and its attorneys acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

23. Defendant agrees that this Plea Agreement shall be filed and become a part of the record in this case.

24. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

25. Defendant acknowledges that it has read this Agreement and carefully reviewed each provision with its attorneys. Defendant further acknowledges that it understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 2/20/04

PATRICK J. FITZGERALD
United States Attorney

STOELTING COMPANY
Defendant, by its Vice President,
Mark Cochran

BRIAN R. HAVEY
Assistant United States Attorney

WALTER JONES, JR.
Attorney for Defendant

CAMILLE B. CONWAY
Attorney for Defendant